**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**RACHEL HIGGINS, as personal representative for the ESTATE OF ALAN GOMEZ, deceased, MICHAEL GOMEZ, GUADALUPE SILVA and ERIC GOMEZ**

**Plaintiffs,**

**vs.** **No. 12CV70**

**SEAN WALLACE and RAY SCHULTZ, individually and in their official capacities as officers of the Albuquerque Police Department, and the CITY OF ALBUQUERQUE, a municipal corporation,**

**Defendants.**

**NOTICE OF REMOVAL**

Pursuant to 29 U.S.C. §§ 1441(b) and 1446(a), Defendants Sean Wallace, Ray Schultz and the City of Albuquerque (hereinafter "Defendants"), give Notice of Removal to this Court of the civil action originally filed on December 19, 2011, in the Second Judicial District Court for the State of New Mexico, County of Bernalillo, Case No. CV-2011-12386, and as grounds therefore states:

1. A Complaint (hereinafter the "Complaint") was filed with the Second Judicial District Court on December 19, 2011. A copy of the Complaint is attached as Exhibit A.

2. The undersigned counsel, on behalf of Defendants Sean Wallace, Ray Schultz and the City of Albuquerque, accepted service of Plaintiffs' Complaint on December 23, 2011.

3. This Notice of Removal is timely filed within thirty days after receipt and service of the summons and Complaint upon Defendants Sean Wallace, Ray Schultz and the City of Albuquerque.

4. Pursuant to 28 U.S.C. §1446(d), copies of the Notice of Removal will be promptly given to all adverse parties and a copy of the Notice of Removal will be filed with the Clerk of the Second Judicial District Court, County of Bernalillo, State of New Mexico.

5. Claims stated against Defendant Acosta in this case are subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 and 1343(a)(3) and (4) as follows:

a. This Court has original jurisdiction because the Complaint is founded on a claim or right arising under the United States Constitution and the laws of the United States. (See Exhibit A.)

b. An actual controversy exists because the Complaint alleges that Defendants deprived Alan Gomez of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. (See Exhibit A at 13-15.)

6. Defendants Sean Wallace, Ray Schultz and the City of Albuquerque. consent to this removal.

Respectfully submitted,

CITY OF ALBUQUERQUE
David Tourek
City Attorney

/s/ *Kathryn Levy*
Kathryn Levy
Deputy City Attorney
*Attorney for Defendants*
P. O. Box 2248
Albuquerque, NM 87102
(505) 768-4500

It is hereby certified that a true copy of the foregoing pleading was served via Notice of Electronic filing and U.S. Mail to:

*FINE LAW FIRM*
*Joseph M. Fine*
*David M. Fine*
*220 Ninth Street NW*
*Albuquerque, NM 87102*
*(505) 243-4541*

on this 23rd day of January 2012..

/s/ *Kathryn Levy*
Kathryn Levy
Deputy City Attorney

**SECOND JUDICIAL DISTRICT COURT**
**COUNTY OF BERNALILLO**
**STATE OF NEW MEXICO**

**RACHEL HIGGINS, as personal representative for the ESTATE OF ALAN GOMEZ, deceased, MICHAEL GOMEZ, GUADALUPE SILVA and ERIC GOMEZ,**

**Plaintiffs,**

**vs.** **No. ____________________**

**SEAN WALLACE and RAY SCHULTZ, individually and in their official capacities as officers of the Albuquerque Police Department, and the CITY OF ALBUQUERQUE, a municipal corporation,**

**Defendants.**

## COMPLAINT

COME NOW Plaintiffs, by and through their attorneys of record, the Fine Law Firm, and for their Complaint state the following:

### *JURISDICTION AND VENUE*

1. This Court has jurisdiction over the subject matter and parties to this action pursuant to its general jurisdiction.

2. Venue is proper in this Court because Defendants are residents of Bernalillo County, New Mexico and all of the acts complained of occurred in Bernalillo County, New Mexico. Plaintiffs' causes of action arose in Bernalillo County, New Mexico.

### *PARTIES*



PENGAD 800-631-6989
DEFENDANT'S EXHIBIT
A

3. At all times relevant to this Complaint, Alan Gomez and Plaintiffs were residents of Bernalillo County, New Mexico. Plaintiff Guadalupe Silva is Alan's mother. Plaintiff Michael Gomez is Alan's father. Plaintiff Eric Gomez is Alan's brother.

4. At all times relevant to the allegations against it, Defendant City of Albuquerque was a municipal corporation, duly authorized under the laws of the State of New Mexico, responsible for the maintenance and operation of the Albuquerque Police Department (hereafter "APD").

5. At all times relevant to the allegations against him, Defendant Sean Wallace was a resident of Bernalillo County, employed as a full-time, salaried, duly certified law enforcement officer with APD.

6. At all times relevant to the allegations against him, Defendant Raymond Schultz was a resident of Bernalillo County and APD's Police Chief, with management and oversight duties over it.

7. Defendants Wallace and Schultz are sued individually and in their official capacities.

8. At all material times, Defendants Wallace and Schultz acted under the color of law and under the governance of the ordinances, policies and customs of the Defendant City of Albuquerque. Defendants Wallace and Schultz acted in the course and scope of their respective employment with the City of Albuquerque at all times material.

## *FACTUAL ALLEGATIONS*

### I. APD'S CUSTOMS, POLICIES, AND PRACTICES.

#### A. APD'S Practice of Ignoring its Own Hiring and Retention Standards.

9. Between 2000 and 2010, Defendant City of Albuquerque decided to increase the number of police officers within APD and undertook a concerted campaign to do so.

10. In order to meet Defendant City of Albuquerque's demand to increase new hires, it became APD's practice during this time-frame to violate its own standards for hiring new officers and for retaining existing officers.

11. Among other things, in order to meet the demand for new hires, APD ignored its requirement that a candidate have a college degree, ceased independent psychological evaluations of candidates, accepted lateral transfers from other law enforcement agencies with less rigorous training standards, and overlooked episodes of prior misconduct by candidates.

12. The standards that were violated in order to meet the City's demand for new APD hires were important standards for the operation of a police department, for the safety of the community, and for maintaining the delicate constitutional balance between individual rights and community protection.

13. This new practice reflected a prioritization of political or bureaucratic expediency over the individual rights and safety of the community.

14. The new practice resulted in the hiring and retention of individuals who did not meet APD's stated standard of excellence, and who's flawed character or judgment otherwise should have resulted in rejection.

## B. APD's Custom of Misidentifying Objects as Weapons.

15. Beginning in approximately 2008 and continuing through May 10, 2010, APD and its officers engaged a custom of misidentifying harmless objects as weapons during or after

officer-involved shootings, and attributing the decision to shoot in whole, or in part, to the threat associated with the object that was misidentified as a weapon.

16. APD officers engaged in this custom even when the object that was misidentified as a weapon was not actually in the possession of the victim at the time of the shooting.

17. While some APD officers made honest mistakes regarding the nature of objects in the possession of victims of officer-involved shootings, other officers engaged in this custom dishonestly, after a shooting, in an effort to avoid adverse legal or employment consequences.

18. Regardless of whether this custom of misidentification resulted from dishonest attempts to cover-up mistakes or misconduct, or honest confusion about the appearance of an object, it posed an extreme danger to the community and required immediate redress.

19. APD supervisors, including Defendant Schultz, knew of this custom of misidentifying objects as weapons during, or after, community-member shootings, but did nothing to investigate, mitigate, or stop it. Alternatively, if APD and its supervisors did make efforts to investigate, mitigate, or stop this custom, such efforts were unreasonable and inadequate.

20. APD's failure to adequately investigate, mitigate, or stop its officers' custom of misidentifying objects constituted a tacit approval of the custom, and operated to reinforce it.

C. APD's Policy of Non-Accountability.

21. At the same time that APD engaged in the custom and practice described above, and in part because of them, APD also engaged in a policy refusing or otherwise failing to hold its officers accountable for misconduct and/or violations of APD policies.

22. This policy of non-accountability was also comprised of the following features:

a. the failure to reprimand, discipline, or remedially train officers who had violated APD policy or law, including officers who were dishonest or who had unnecessarily or unreasonably used deadly force;

b. an appearance to APD police officers that disciplinary action was imposed arbitrarily or that it was motivated by media reports and political expediency;

c. a breakdown of APD's system of supervision;

d. a no-settlement or limited-settlement, policy, under which Defendant City of Albuquerque refused to, or limited the settlement of, police use of force cases regardless of their merit.

## II. DEFENDANT WALLACE'S FORCED DEPARTURE FROM STATE POLICE

23. On August 18, 2001, as a New Mexico State Police Officer, Defendant Wallace arrested Floyd Griego in Chimayó, New Mexico without reasonable suspicion or probable cause.

24. After falsely arresting Mr. Griego, Defendant Wallace committed battery and false imprisonment against him by throwing him to the ground and injuring his ribs.

25. After falsely arresting and battering Mr. Griego, Defendant Wallace maliciously abused judicial and quasi-judicial processes by initiating numerous inappropriate charges against Mr. Griego. All or most of the judicial and administrative proceedings that Defendant Wallace initiated against Mr. Griego were dismissed.

26. Mr. Griego filed a civil lawsuit against Defendant Wallace for his misconduct during and after the arrest. The lawsuit settled.

27. On September 22, 2004, while still employed by the New Mexico State Police, Defendant Wallace shot and killed an unarmed man named Leo Lopez in Tierra Amarillo, New Mexico.

28. Mr. Lopez was suspected of being involved in drug activity and Defendant Wallace was monitoring him in an undercover capacity.

29. During the course of Defendant Wallace's investigation, Mr. Lopez entered his vehicle and began to reverse it. Defendant Wallace, who was situated behind the truck and who was not wearing a police uniform, allegedly perceived that Mr. Lopez was trying to run him over.

30. Defendant Wallace fired multiple shots at Mr. Lopez, striking him with four bullets in the back and killing him. Mr. Lopez was not armed.

31. After Mr. Lopez' family sued Defendant Wallace for the killing, the case settled for $234,000.

32. In 2007, Defendant Wallace was investigated for billing the State of New Mexico for attending law enforcement classes that he himself was being paid to teach.

33. Defendant Wallace's fraudulent billing cost the State of New Mexico thousands of dollars.

34. Upon information and belief, Defendant Wallace was informed by the State of New Mexico that he would be terminated from the State Police Department unless he left on his own terms.

35. During the threat of termination from the New Mexico State Police Department, Defendant Wallace applied to APD.

## III. DEFENDANT WALLACE'S HIRING AT APD AND HIS 2010 SHOOTING OF AN UNARMED MAN.

36. Before hiring Defendant Wallace, APD was aware that his career in law enforcement was marred by fraud and by excessive force claims, including deadly force.

37. Nonetheless, in keeping with APD's practice of ignoring its own hiring standards, Defendants City of Albuquerque and Schultz hired Defendant Wallace.

38. On January 29, 2010, while Defendant Wallace was working at APD, he shot an unarmed man named Wayne Cordova.

39. Prior to the 2010 incident, Mr. Cordova had been diagnosed with numerous mental conditions, including Bipolar Disorder.

40. On January 29, 2010, Mr. Cordova stole a vehicle and fled from police.

41. When Defendant Wallace shot him, Mr. Cordova was on a rooftop, crying and asking to be killed.

42. Mr. Cordova was never armed on the rooftop.

43. Nonetheless, after the shooting and in keeping with APD's custom of misidentifying objects as weapons during officer-involved shootings, Defendant Wallace and APD offered conflicting accounts of whether or not Mr. Cordova had an object in his hand at the time of that the Defendant Wallace shot him, and different explanations for why the shot was fired.

44. In keeping with its policy of non-accountability, APD failed to adequately reprimand, discipline, train, or otherwise correct Defendant Wallace's conduct in shooting an unarmed man on a roof, and/or failed to communicate to Defendant Wallace that the shooting of Mr. Cordova was undesirable or unacceptable.

45. To the contrary, by failing to take disciplinary or remedial action, APD communicated to Defendant Wallace that his conduct in shooting Mr. Cordova was consistent with APD policy, and authorized and emboldened Defendant Wallace to repeat similar conduct in the future.

## IV. DEFENDANT WALLACE'S 2011 KILLING OF ALAN GOMEZ

46. On May 10, 2011, Defendant Wallace and other police officers responded to a dispatch at 2813 Madison, NE.

47. APD had been informed that Alan Gomez suffered from mental illness and that he did not want to let his brother and his brother's girlfriend leave their home.

48. No APD officer, including Defendant Wallace, observed Alan Gomez, at any time, armed with a weapon or threatening APD officers or any other individuals.

49. APD officers, including Defendant Wallace, observed Alan Gomez repeatedly step outside the front door of the residence at 2813 Madison, NE and smoke a cigarette.

50. After stepping outside again, unarmed, Alan Gomez turned around and reentered the residence.

51. After a steel screen door closed behind him, Defendant Wallace shot Alan Gomez through the back, causing his death.

52. Alan Gomez, at all material times, was unarmed.

53. After Alan Gomez was shot, APD expressed its belief that he had been holding a large kitchen spoon at the time he was shot, and that this spoon had been misidentified as a weapon.

54. Defendant Wallace shot Alan Gomez while his back was turned to Defendant Wallace and while Alan Gomez was not posing an immediate threat to APD officers or any other individual.

55. Defendant Wallace, without authority from a superior officer, intentionally fired his gun and killed Alan Gomez.

56. Defendant Wallace was in possession of alternative force, such as a bean bag gun, but chose to use deadly force against an unarmed man.

57. Other officers on the scene had the opportunity to shoot Alan Gomez at the time that Defendant Wallace shot him, but refrained from doing so because it was unnecessary, contrary to APD policy, and contrary to law.

## *TORT CLAIMS*

### <u>COUNT I</u>: WRONGFUL DEATH AGAINST DEFENDANT WALLACE

58. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

59. On May 10, 2010, Defendant Wallace intentionally and/or recklessly assaulted, battered, and killed Alan Gomez.

60. If the above-described actions of the Defendant Wallace were not reckless or undertaken with deliberate indifference, they were negligent, and such negligence resulted in battery.

61. Defendant Wallace was acting within the scope of his duties as a law enforcement officer when he committed these intentional torts, and/or reckless acts, and/or negligent acts, against decedent.

62. Whether intentional, reckless, or negligent, Defendant Wallace's tortious actions proximately caused Alan Gomez damages and injuries, including physical injuries and death, physical pain and suffering, loss of enjoyment of life, future earning capacity, medical expenses, lost wages and other expenses attendant to his death.

WHEREFORE, Plaintiff Higgins requests compensatory damages against Defendant Wallace, pre-judgement and post-judgement interest together with all costs and attorneys' fees.

**COUNT II: NEGLIGENT HIRING AND RETENTION AGAINST DEFENDANTS CITY OF ALBUQUERQUE AND SCHULTZ**

63. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

64. Defendants City of Albuquerque and Schultz owed Alan Gomez, Plaintiffs, and the Albuquerque community a duty of care that included the duty to make reasonable hiring and retention decisions.

65. In light of his history as a law enforcement officer, detailed above, the decision by Defendants City of Albuquerque and Schultz to hire Defendant Wallace was not reasonable and constituted a breach of their respective duties of care. Alternatively, if Defendants City of Albuquerque and Schultz were unaware of the details of Defendant Wallace's employment history, this ignorance was itself unreasonable and negligent.

66. Particularly in light of his history with the New Mexico State Police, Defendants City of Albuquerque's and Schultz' decision to retain Defendant Wallace after he shot Wayne Cordova was not reasonable and constituted a breach of their respective duties of care.

67. The unreasonable and negligent hiring and retention of Defendant Wallace by Defendants City of Albuquerque and Schultz proximately caused Alan Gomez damages and injuries, described above.

WHEREFORE, Plaintiff Higgins requests compensatory damages against Defendants City of Albuquerque and Schultz together, pre-judgement and post-judgement interest together with all costs and attorneys' fees.

## COUNT III: NEGLIGENT SUPERVISION AGAINST DEFENDANTS CITY OF ALBUQUERQUE AND SCHULTZ

68. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

69. Defendants City of Albuquerque and Schultz owed Alan Gomez, Plaintiffs, and the Albuquerque community a duty of care that included the duty to reasonably supervise Defendant Wallace.

70. Defendant Wallace's history of fraud, officer-involved shootings, and claims of excessive force magnified the need for careful supervision by Defendants City of Albuquerque and Schultz.

71. Defendants City of Albuquerque and Schultz failed to reasonably supervise Defendant Wallace, thereby breaching their respective duties of care.

72. This breach consisted of, but is not limited to, engaging in the policy and practice described in Part I, above, tacitly authorizing the custom of misidentifying objects as guns, as described above, and failing to take adequate disciplinary or remedial measures in response Defendant Wallace's shooting of Wayne Cordova.

73. Defendant City of Albuquerque and Schultz' failure to adequately supervise Defendant Wallace proximately caused Alan Gomez' injuries and death, described above.

WHEREFORE, Plaintiff Higgins requests compensatory damages against Defendant City of Albuquerque and Schultz together, pre-judgement and post-judgement interest together with all costs and attorneys' fees.

## COUNT IV: LOSS OF CONSORTIUM

74. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

75. As a further direct and proximate result of Defendants' actions and the resulting death of Alan Gomez, Alan Gomez' parents, Plaintiffs Michael Gomez and Guadalupe Silva, and his brother, Plaintiff Eric Gomez, have experienced and will continue to experience a loss of the company, society, cooperation, affection and joy of their relationship with Alan Gomez.

WHEREFORE, Plaintiffs Michael Gomez, Guadalupe Silva, and Eric Gomez request compensatory damages against all Defendants together, pre-judgement and post-judgement interest, together with all costs and attorneys' fees.

## COUNT V: BYSTANDER LIABILITY/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

76. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

77. Plaintiff Eric Gomez, had a close family relationship with his brother Alan Gomez, and suffered severe emotional distress as a result of perceiving the battery and death of his brother.

WHEREFORE, Plaintiff Eric Gomez requests compensatory damages against all Defendants together, pre-judgement and post-judgement interest, together with all costs and attorneys' fees.

## COUNT VI: RESPONDEAT SUPERIOR

78. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

79. The duly authorized agents and employees of the City of Albuquerque, including but not limited to Defendant Wallace, were negligent while acting within the scope of their employment, and such negligence resulted in a battery and the death of Alan Gomez.

80. Defendant Wallace and other officers involved in the events leading up the shooting proximately caused decedent's damages and injuries, as set forth above.

81. Under the concept of "respondeat superior," the City of Albuquerque, as principal, is responsible for the negligent conduct of its agents, including Defendants Shultz and Wallace, and any other APD agents whose tortious conduct proximately caused Alan Gomez' death.

WHEREFORE, Plaintiffs request compensatory damages against Defendant City of Albuquerque, pre-judgement and post-judgement, interest together with all costs and attorneys' fees.

### *CIVIL RIGHTS CLAIMS*

### COUNT VII: DELIBERATE INDIFFERENCE BY THE CITY OF ALBUQUERQUE AND RAY SHULTZ

82. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

83. Taken individually or together, the custom, policy, and practice described in Part I of this Complaint, constituted deliberate indifference by Defendants City of Albuquerque and Schultz to the constitutional rights of Alan Gomez and the Albuquerque community. The custom, policy, and practice described in Part I of this Complaint proximately caused a violation of Alan Gomez' constitutional rights, including but not limited to his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from illegal searches or seizures, from unjustified intrusions into his personal security and bodily integrity, and from being deprived of life or liberty without due process of law.

84. The failure of Defendants Schultz and City of Albuquerque to reasonably train Defendant Wallace in the proper use of deadly force constituted deliberate indifference to the

constitutional rights of Alan Gomez and the Albuquerque community, and proximately caused a violation Alan Gomez' constitutional rights.

85. The hiring and retention of Defendant Wallace by Defendants Schultz and City of Albuquerque constituted deliberate indifference to the constitutional rights of Alan Gomez and the Albuquerque community, and proximately caused a violation Alan Gomez' constitutional rights.

86. The failure of Defendants Schultz and City of Albuquerque to reasonably supervise Defendant Wallace, who had a known history of shooting unarmed members of the public, constituted deliberate indifference to the constitutional rights of Alan Gomez and the Albuquerque community, and proximately caused a violation Alan Gomez' constitutional rights.

87. The acts and omissions of Defendants Schultz and City of Albuquerque were intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless disregard of decedent's constitutional rights. As a result of the nature of Defendant Schultz' conduct, Plaintiff is entitled to recover punitive damages.

WHEREFORE, Plaintiff Higgins requests compensatory and punitive damages against Defendant Schultz, and compensatory damages against Defendant City of Albuquerque together, pre-judgement and post-judgement interest, together with all costs and attorneys' fees.

**COUNT VIII: EXCESSIVE FORCE BY DEFENDANT WALLACE**

88. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

89. On May 10, 2010, Defendant Wallace used deadly force in seizing and detaining Alan Gomez. Such force was excessive and objectively unreasonable under the circumstances.

90. Defendant Wallace, acted in bad faith, willfully, knowingly and purposefully with the specific intent to deprive plaintiffs' decedent of his constitutional rights, and further acted in a grossly negligent manner, recklessly, wantonly, oppressively, willfully and in reckless, callous and deliberate disregard and indifference for Alan Gomez' constitutional rights, including but not limited to his rights under the Fourth and Fourteenth Amendments to the United State Constitution to be free from illegal searches or seizures, unjustified intrusions into his personal security and bodily integrity, and from being deprived of life or liberty without due process of law.

91. Defendant Wallace's conduct, as described above, was objectively unreasonable and excessive in relation to the force which was necessary under the circumstances.

92. Defendant Wallace's actions were intentional, willful, wanton, obdurate, in gross and reckless disregard of Alan Gomez' rights, and taken with deliberate indifference to his rights.

93. Defendant Wallace's use of excessive deadly force proximately caused a violation of Alan Gomez' constitutional rights, including his rights under the Fourth and Fourteenth Amendments, and the damages and injuries associated with his death.

94. Defendant Officer Sean Wallace's conduct constituted an unreasonable seizure in violation of Alan Gomez' rights guaranteed to him by the Fourth and Fourteenth Amendments to the U.S. Constitution.

95. As a result of the nature of Defendant Wallace's conduct, Plaintiff is entitled to recover punitive damages.

WHEREFORE, Plaintiff Higgins requests compensatory and punitive damages against Defendant Wallace, pre-judgement and post-judgement interest, together with all costs and attorneys' fees.

## *REQUEST FOR RELIEF*

WHEREFORE, Plaintiffs seek the following relief against Defendants:

I. Compensatory damages jointly and severally against all defendants;

II. Punitive damages on the federal claims alleged above sufficient to punish Defendants' misconduct and to deter future misconduct;

III. Equitable relief as determined by the Court;

IV. Attorneys' fees, expenses, costs, pre-judgment interest and post-judgment interest as provided by law; and

V. Such other relief as this Court deems just and proper.

/s/ Joseph M. Fine
JOSEPH M. FINE
DAVID M. FINE
Attorneys for Plaintiff
Fine Law Firm
220 Ninth St., NW
Albuquerque, NM 87102
(505) 243-4541